IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DEANDRE CRAWFORD,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GHALIAH OBAISI,**<br>**INDEPENDENT EXECUTOR OF**<br>**THE ESTATE OF SALEH OBAISI,**<br><br>**Defendants**. | Case No. 15 cv 01597<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Plaintiff DeAndre Crawford brings this civil rights lawsuit under 42 U.S.C. § 1983, against Defendant, Ghaliah Obaisi, as Independent Executor of the Estate of Saleh Obaisi, M.D., Deceased ("Dr. Obaisi"), for violating his Eighth Amendment rights. For the reasons stated below, the Court grants summary judgment in favor of Defendant and against Crawford. (Dkt. 192).

## BACKGROUND

On May 14, 2014, Crawford suffered a seizure and fell from his top bunk at Stateville Correctional Center. (Dkt. 199 at 1) During his seizure, "Crawford lost consciousness and fell to the floor of his cell, landing with sufficient force on his head that he snapped his front tooth in half." (*Id*.) Unable to stand, Crawford was taken to the health care unit in a wheelchair where he was examined by Dr. Obaisi. (Dkt. 200 ¶¶ 46, 49, 62) Dr. Obaisi asked Crawford several questions, looked in his eyes, and

1

referred him to the dental department on an urgent basis. (*Id.* at ¶¶ 46, 49) Dr. Obaisi testified that he performed a neurological examination on Crawford, which included determining whether Crawford was alert and oriented, and observing Crawford's eyes and cranial nerves to make sure there was no brain bleeding. (Dkt. 194 ¶ 46). Crawford contests whether Dr. Obaisi conducted a neurological exam, claiming instead that Dr. Obaisi merely asked him two questions and looked in his eyes before shuffling him off to the next medical provider. (Dkt. 200 ¶ 46) Dr. Obaisi additionally prescribed Crawford with an anti-seizure medication. (Dkt. 194 ¶ 46) Crawford was then taken to the dental department to address his broken tooth. (Dkt. 200 ¶ 39) After his appointment with the dental department, Crawford was taken back to the healthcare unit, but was not seen by Dr. Obaisi again. (Dkt. 199 at 4)

Crawford does not recall his conversation with Dr. Obaisi during his May 14, 2014 examination. (Dkt. 200 ¶ 43) He does admit, however, that he did not complain about any other part of his body, including his neck, shoulders, hip or lower back at that appointment. (*Id.* at ¶ 45) Over the next three months, Crawford had several appointments with medical personnel for various ailments.[1] (*Id.* at ¶¶ 50-53) None of the appointment notes contain complaints of pain in Crawford's neck, shoulders, back, or hip. (*Id.*) Yet Crawford maintains that he reported pain in these areas at each appointment. (*Id.* at ¶ 73) On August 19, 2014, Crawford requested an

---

[1] Crawford had a follow up appointment on May 16, 2014, an appointment regarding testicular pain on June 4, 2014, an appointment regarding abdominal pain on July 15, 2014, and an appointment regarding Crawford's blood pressure and seizures on August 12, 2014. None of the medical personnel's appointment notes contain any complaints of pain in Crawford's neck, shoulders, back, or hip. (Dkt. 200 ¶¶ 50-53)

2

appointment with Dr. Obaisi to address pain in his left shoulder and neck. (*Id.* at ¶ 54) That appointment is the first official record of pain in Crawford's neck and shoulders. At that appointment, Dr. Obaisi examined Crawford, diagnosed Crawford with a neck and shoulder sprain, and prescribed Naprosyn, a non-steroidal anti-inflammatory medication. (*Id.*)

Crawford filed suit against Dr. Obaisi, claiming that Dr. Obaisi was deliberately indifferent to Crawford's serious medical need following his fall. His claim focuses on the examination immediately after the seizure and fall on May 14, 2014. Crawford argues that Dr. Obaisi's failure to physically examine him after his fall on May 14, 2014, and the resultant failure to diagnose the neck and shoulder sprain, forced Crawford to endure unnecessary pain for three months. Dr. Obaisi now moves for summary judgment.

## **LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine factual dispute exists when there is enough evidence that a reasonable jury could find in favor of the nonmoving party. *Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 661 (7th Cir. 2016); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of

3

reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323; *see also White*, 829 F.3d at 841 (summary judgment warranted where a reasonable juror could not find in favor of the non-moving party "on the evidence submitted in support of and opposition to the motion for summary judgment") (internal citation omitted).

## **DISCUSSION**

Dr. Obaisi moves for summary judgment, arguing that Crawford failed to establish that Dr. Obaisi was deliberately indifferent, that Dr. Obaisi is entitled to qualified immunity, and that Crawford's claim for punitive damages fails.

"It is well-established that prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs." *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual was deliberately indifferent to that condition."

4

*Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). The parties' briefing focuses on the second element.[2]

Deliberate indifference requires that a defendant actually know about yet disregard a substantial risk of harm to an inmate's health or safety. *Petties*, 836 F.3d at 728. "The standard is a subjective one: the defendant must know facts from which he could infer that a substantial risk of serious harm exists and he must actually draw that inference." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016); *see also Petties*, 836 F.3d at 728 ("[T]he Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm.") (emphasis in original).

"When a prison medical professional is accused of providing *inadequate* treatment (in contrast to *no* treatment), evaluating the subjective state-of-mind element can be difficult." *Whiting v. Wexford Health Services, Inc.*, 839 F.3d 658, 663 (7th Cir. 2016) (emphasis in original). The Supreme Court and the Seventh Circuit have been clear that evidence of medical negligence is not enough to prove deliberate indifference. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Petties*, 836 F.3d at 728 ("[P]laintiffs must show more than mere evidence of malpractice to prove deliberate indifference"); *see also Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir.

---

[2] Neither of Defendant's briefs addresses whether Crawford suffered from an objectively serious medical condition. Plaintiff's Reply Brief addresses the question briefly and argues that Plaintiff suffered from an objectively serious medical condition. (Dkt. 199 at 3) The Court presumes this factor for summary judgment purposes.

2008) ("Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts"); *Greeno v. Daley*, 414 F.3d 645. 653 (7th Cir. 2005) ("[N]either medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference."). Without more, an exercise of professional judgment cannot be deliberate indifference. "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference…A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury can discredit that claim, the doctor is entitled to summary judgment." *Whiting*, 839 F.3d at 664 (citing *Zaya v. Sood*, 836 F.3d at 805-06).

Courts defer to medical professional's treatment decisions unless there is evidence that "no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citing *Pyles v.Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). Where evidence exists that the doctor "knew better than to make the medical decision that he did," then summary judgment is improper and the claim should be submitted to a jury. *Whiting*, 839 F.3d at 664 (citing *Petties*, 836 F.3d at 730-31). State of mind evidence sufficient to survive a motion for summary judgment "might include the obviousness of the risk from a particular course of medical treatment; …persistence in a course of treatment known to be ineffective; or proof that the defendant's treatment departed so radically from accepted professional judgment, practice, or standards that a jury may reasonably infer that the decision

6

was not based on professional judgment." *Walker v. Wexford*, 940 F.3d 954, 964 (7th Cir. 2019) (citing *Whiting*, 839 F.3d at 664).

Defendant argues that Crawford has failed to provide any evidence that Dr. Obaisi was deliberately indifferent, or that his treatment was unreasonable or a deviation from accepted medical norms. (Dkt. 193 at 11-12) Crawford makes several arguments in response: 1) Dr. Obaisi's treatment was unreasonable on the May 14, 2014 visit because it was obvious that Crawford required a full physical examination; 2) an issue of fact remains as to whether Crawford told medical providers about his neck and shoulder at subsequent appointments; and 3) a jury could reasonably conclude that the three-month delay caused Crawford unnecessary pain and may support an inference of deliberate indifference. The Court will address each argument in turn.

**1. Dr. Obaisi's Treatment on May 14, 2014**

Crawford's main argument in response to summary judgment is that a jury could find Dr. Obaisi deliberately indifferent because his treatment decisions on May 14, 2014 were obviously unreasonable. Crawford first argues that Dr. Obaisi did not conduct a full neurological exam, but merely looked in his eyes and asked him two questions. (Dkt. 199 at 3) Crawford cites to several website links to demonstrate that Dr. Obaisi's neurological exam was deficient, but does not cite to any expert testimony or other evidence.[3] Crawford also argues that Dr. Obaisi's failure to conduct a full

---

[3] Plaintiff cites to the following websites: https://www.hopkinsmedicine.org/health/conditions-and-diseases/neurological-examination; https://meded.ucsd.edu/clinicalmed/neuro2.htm; https://www.ncbi.nlm.nih.gov/books/NBK348940/; and https://infor

7

physical examination was unreasonable, and that Crawford's need for a full physical examination was obvious given that Crawford had just experienced a seizure that resulted in a fall from a top bunk onto a concrete floor. (Dkt. 199) However, Crawford provides no evidence—other than his own deposition testimony stating that his needs were obvious and several website links—in support of his arguments.

The Court agrees with Defendant that no evidence in this case supports an inference that Dr. Obaisi subjectively "knew better" than to pursue the course of treatment that he did. As mentioned above, both Dr. Obaisi's deposition testimony and Crawford's deposition testimony demonstrate that Crawford did not tell Dr. Obaisi that he had any pain in his neck, shoulders, hip, or back at the May 14, 2014 appointment. (Dkt. 200 ¶¶ 43-45) Dr. Obaisi testified that Crawford only complained of the broken tooth as a result of a self-reported seizure and fall from his bunk. (Dkt. 193 at 10) The record contains no evidence from which a jury could infer that Dr. Obaisi actually knew of Crawford's neck and shoulder injury on May 14, 2014 and chose to disregard it.

Additionally, Crawford has provided no evidence that Dr. Obaisi's treatment decisions substantially departed from accepted medical practice. The only evidence provided by Crawford includes his own determination that his neck and shoulder

---

matics.med.nyu.edu/modules/pub/neurosurgery/. These websites generally discuss the features of a neurological exam. Defendant argues that the Court should not consider these websites, citing a lack of proper foundation, and argues that these websites actually support Dr. Obaisi's arguments that he conducted an adequate neurological exam. (Dkt. 207 at 3-4) Regardless, Plaintiff does not cite to any evidence other than these websites.

8

injuries were obvious. Crawford has provided no expert testimony. Without evidence that Dr. Obaisi's failure to physically examine Crawford substantially departed from accepted medical standards, Crawford has only shown that he disagrees with Dr. Obaisi's treatment. That is not enough to create a genuine issue of material fact as to whether Dr. Obaisi was deliberately indifferent to Crawford's serious medical needs. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (deliberate indifference requires more than a disagreement with a doctor's medical judgment); *Walker v. Zunker*, 30 Fed. Appx. 625, 628 (7th Cir. 2002) ("[w]ithout any medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of treatment is insufficient to raise a genuine issue of material fact").

To survive summary judgment, Crawford needed to present evidence sufficient to show that Dr. Obaisi's treatment decisions were "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Whiting*, 839 F.3d at 664 (citing *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). Crawford's evidence here falls short of what is required. Crawford has not provided *any* expert testimony indicating that Dr. Obaisi's treatment departed from accepted medical practice, much less *substantially* so. *See Whiting*, 839 F.3d at 663.

In contrast, Dr. Obaisi has provided evidence that he was, in fact, responsive to Crawford's medical needs on May 14, 2014, and extended adequate care to Crawford. In his deposition testimony, Dr. Obaisi stated that he performed a neurological exam on Crawford to rule out the most probable and serious medical

9

issues that could have resulted from a fall of that magnitude. (Dkt. 193 at 11) After determining that Crawford was alert and oriented, Dr. Obaisi provided Crawford with anti-seizure medication to prevent another episode of this kind, and immediately referred Crawford to the dental department on an urgent basis.[4] Based on this record, no reasonable jury could find that Dr. Obaisi was subjectively indifferent to Crawford's serious medical needs.

**2. Crawford's Subsequent Appointments**

Crawford next argues that an issue of fact remains as to whether he told medical staff about his neck and shoulder pain prior to August 19, 2014. (Dkt. 199 at 6) As mentioned above, Crawford had several appointments with medical staff between the date of his fall and the date he received a diagnosis and treatment for his neck and shoulder sprain.[5] None of the medical notes for those appointments contain complaints of pain in Crawford's neck, shoulder, back, or hip. (Dkt 200 ¶ 43) Yet Crawford maintains that he reported pain in these areas at each appointment, and that medical staff ignored his complaints. (*Id*. at ¶ 73)

Crawford's own testimony is the only evidence in his favor and is directly contradicted by various medical records and notes provided by Defendant. His own,

---

[4] Treating the tooth was outside Dr. Obaisi's expertise, and Crawford does not fault Dr. Obaisi for any of the care stemming from his tooth. Crawford dismissed the dental care provider after Defendants filed their motion for summary judgment. (Dkt. 198)
[5] Crawford had a follow up appointment on May 16, 2014, an appointment regarding testicular pain on June 4, 2014, an appointment regarding abdominal pain on July 15, 2014, and an appointment regarding Crawford's blood pressure and seizures on August 12, 2014. None of the medical personnel's appointment notes contain any complaints of pain in Crawford's neck, shoulders, back, or hip. (Dkt. 200 ¶¶ 50-53)

self-serving testimony is not enough to create a genuine issue of material fact, especially when directly contradicted by the record. *See Walker*, 30 Fed. Appx. at 628 ("[w]ithout any medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of treatment is insufficient to raise a genuine issue of material fact"); *U.S. v. Funds in the Amount of $100,120.00*, 730 F.3d 711, 718 (7th Cir. 2013) (noting that, although unsubstantiated, self-serving affidavits may generally be used to defeat summary judgment, parties may not "manufacture material fact questions by affidavit testimony that contradicts prior sworn testimony.").

Crawford's response to summary judgment briefly mentions that the absence of a note in a medical record cannot establish lack of a complaint, and that Dr. Obaisi did not provide "any evidence about the practices of note-takers." (Dkt. 199 at 6) However, it is not Dr. Obaisi's burden to do so. Crawford himself has failed to present any evidence or reasons to doubt the accuracy of the note-takers. Again, the only evidence in Crawford's favor is his own testimony which is directly contradicted by the record. Based on the record before the Court, there is no genuine dispute of material fact to submit to a jury.

### 3. Delay in Diagnosis and Treatment

Crawford further argues that the three-month delay in treatment caused Crawford unnecessary pain and may "support an inference of deliberate indifference." (Dkt. 199 at 2) (citing *Gaston v. ParthaSarthi Ghosh*, No. 11 C 6612, 2017 WL 5891042, at *8 (N.D. Ill. Nov. 28, 2017)). In response, Dr. Obaisi counters that the

evidentiary record reveals that Dr. Obaisi was responsive to Plaintiff's complaints and cannot support an inference of deliberate indifference.

The question of whether the three-month delay caused Crawford unnecessary pain is only relevant if Crawford had demonstrated deliberate indifference. Once a plaintiff demonstrates deliberate indifference, he must also demonstrate causation in order to prevail. *See Grayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (stating the elements of a deliberate indifference claim: (1) an objectively serious medical condition, (2) defendants knew of the condition and were deliberately indifferent in treating the plaintiff, and (3) the indifference caused the injury or harm). When the plaintiff alleges the defendant delayed, rather than denied, medical treatment, the Seventh Circuit has required the plaintiff to present "verifying medical evidence" that the delay, and not the underlying condition, caused some harm. *Walker v. Wexford*, 940 F.3d 954, 964 (7th Cir. 2019) (citing *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)).

Here, Crawford argues that the delay in diagnosis and treatment caused harm in the form of unnecessary and prolonged pain. (Dkt. 199 at 5) However, the Court need not reach this issue as it has already concluded that Crawford failed to demonstrate Dr. Obaisi's deliberate indifference—the second element of Crawford's claim. Even if the Court did reach the causation issue, Crawford's argument would still fail. Crawford has not provided the requisite "verifying medical evidence" that the delay in treatment caused him any additional harm. Crawford's only evidence is Dr. Obaisi's deposition testimony in which Dr. Obaisi acknowledges that treatment

generally lessens the duration of a sprain. (Dkt. 199 at 5) This is hardly sufficient verifying medical evidence to demonstrate causation and harm.

Plaintiff also suggests that the delay in medical treatment may support an inference of deliberate indifference. *Gaston*, 2017 WL 5891042, at *8 (citing *Greiveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)). The Court disagrees. As previously discussed, the record does not indicate that Dr. Obaisi's treatment on May 14, 2014 was deficient. Nor does the record indicate that Dr. Obaisi knew of Plaintiff's pain until August 19, 2014. On the contrary, the record indicates that Dr. Obaisi was responsive to Plaintiff's medical needs at both appointments. Once Crawford complained of pain in his neck and shoulder on August 19, 2014, Dr. Obaisi addressed that concern by diagnosing the sprain and providing Naprosyn. (Dkt. 193 at 12). Even with the delay, these facts do not support an inference that Dr. Obaisi was deliberately indifferent.

Considering Crawford's treatment overall, the Court believes that the record does not show a pattern of deliberate indifference to Crawford's serious medical needs. *See Petties*, 836 F.3d at 728 ("we look at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs."). Rather, the record shows that Dr. Obaisi responded to Crawford's changing symptoms and was receptive to Crawford's medical issues as they arose. No

reasonable jury could infer that Dr. Obaisi was deliberately indifferent. Accordingly, Dr. Obaisi is entitled to summary judgment.[6]

## **CONCLUSION**

For the reasons stated above, the Court grants Defendant's motion for summary judgment.

E N T E R:

Dated: December 20, 2019

MARY M. ROWLAND
United States District Judge

---

[6] Because the Court grants summary judgment based on Dr. Obaisi's first argument, the Court declines to address Dr. Obaisi's other arguments regarding qualified immunity and punitive damages.